UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:24-cv-60357-RLR

MONSTER ENERGY COMPANY,

    Plaintiff/Judgment Creditor,
vs.

JOHN H. OWOC a.k.a. JACK OWOC, et al.,

    Defendants/Judgment Debtors.

**PLAINTIFF MONSTER ENERGY COMPANY'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE ONE SATISFACTION RULE**

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. BACKGROUND ...................................................................................................................4

    A. The California District Court Action ........................................................................4

    B. The Bankruptcy Court Action...................................................................................5

III. ARGUMENT .........................................................................................................................7

    A. The Court Does Not Have Jurisdiction Over Mr. Owoc's Motion ..........................7

    B. Mr. Owoc Waived Any Argument that VPX's Asset Sale Satisfied the Judgment ..................................................................................................................8

    C. The Judgment Was Not Satisfied by VPX's Asset Sale .........................................10

    D. The Settlement Agreement Does Not Affect Monster's Judgment .......................12

IV. CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

Cases

*Acute, Inc. v. ECI Pharms., LLC*,
  2025 WL 1731825 (S.D. Fla. June 18, 2025) ............................................................................ 9

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
  517 F.3d 1271 (11th Cir. 2008) ............................................................................................. 10

*Cascella v. Canaveral Port Dist.*,
  197 Fed. App'x 839 (11th Cir. 2006) ............................................................................. 2, 7, 8

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ............................................................................................................... 11

*D'Angelo v. Fitzmaurice*,
  863 So. 2d 311 (Fla. 2003) .................................................................................................... 10

*De Vos & Co. v. Gabe Corp.*,
  1991 WL 161363 (S.D. Fla Aug. 12, 1991) ............................................................................ 7

*Escadote I corp. v. Ocean Three Ltd. P'ship*,
  211 So. 3d 1059 (Fla. Dist. Ct. App. 2016*)* ........................................................................ 10

*Fuhrman v. Livaditis,*
  611 F.2d 203 (7th Cir.1979) ................................................................................................... 7

*In re Daewoo Motor Co. Ltd., Dealership Litig.*,
  2005 WL 8005218 ................................................................................................................. 10

*Monster Energy Co. v. Vital Pharms., Inc.*,
  2023 WL 2918724 (C.D. Cal. Apr. 12, 2023) ........................................................................ 4

*Monster Energy Co. v. Vital Pharms., Inc.*,
  2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ....................................................................... 4, 5

*Monster Energy Co. v. Vital Pharms., Inc.*,
  2025 WL 1111495 (9th Cir. Apr. 15, 2025) ....................................................................... 4, 5

*Monster Energy Co. v. Vital Pharms, Inc.*,
  2019 WL 2619666 (C.D. Cal. May 20, 2019) ........................................................................ 4

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ............................................................................................................... 11

*Veolia Water N. Am. Operating Servs., LLC v. City of Atlanta*,
  546 F. App'x 820 (11th Cir. 2013) ..................................................................................... 3, 9

*Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*,
  2025 WL 1440351 (S.D. Fla. May 20, 2025) ....................................................................... 10

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Vizant Techs., LLC v. Whitchurch*,
  2016 WL 8856932 (N.D. Ga. May 6, 2016) ............................................................................... 8

Statutes

Fla. Stat. Ann. § 55.141 ................................................................................................................ 7

Rules
Fed. Civ. Proc. R. 69(a)(1) ............................................................................................................ 7

Plaintiff and Judgment Creditor Monster Energy Company ("Monster"), by and through its undersigned counsel, opposes Defendant and Judgment Debtor John H. Owoc's ("Mr. Owoc") Motion to Enforce the One Satisfaction Rule and Bar Additional Collection by Monster Energy Company and to Require Monster Energy to Dismiss All Claims and Remove All Liens (the "Motion"), filed in this foreign judgment domestication case on June 24, 2025, and respectfully states:

I.   INTRODUCTION

For years, Mr. Owoc and the company he founded and owned, Vital Pharmaceuticals, Inc. ("VPX"), falsely claimed that their flagship product, the Bang energy drink, contained the world's only water stable creatine—dubbed "Super Creatine"—that provided consumers with the physical and mental benefits of creatine. Presented with overwhelming evidence that Bang did not contain any creatine at all, let alone a "super" version of it, a jury unanimously found that Mr. Owoc and VPX engaged in willful and deliberate false advertising in violation of the Lanham Act and awarded Monster more than $271 million in damages. Thereafter, the United States District Court for the Central District of California ("California District Court"), where the false advertising action was pending, awarded Monster an additional tens of millions of dollars in attorney's fees, costs, and prejudgment interest.

On January 11, 2024, the California District Court entered judgment in favor of Monster against Mr. Owoc and VPX in the amount of more than $300 million and issued a permanent injunction enjoining Mr. Owoc and VPX from continuing to falsely advertise Bang (the "Judgment"). On March 1, 2024, Monster initiated the above-captioned action to domesticate and enforce the Judgment.

- 2 -

To date, Monster has not received a single payment toward the Judgment from either Mr. Owoc or VPX, and the entire amount, plus post-judgment interest, remains outstanding. Nevertheless, Mr. Owoc asks this Court to find that the Judgment has been satisfied by virtue of Monster's purchase of VPX's assets through a sale process approved by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").[1] Mr. Owoc's Motion fails for at least four independent reasons.

*First*, this Court does not have jurisdiction over Mr. Owoc's Motion. The Motion attempts to relitigate both the false advertising case before the California District Court (the "California District Court Action") and VPX's asset sale overseen by the Bankruptcy Court. Mr. Owoc's arguments are frivolous,[2] but regardless of merit, he cannot challenge the Judgment or bankruptcy orders in this Court. Any such motion must be brought, if at all, in the original court. *See Cascella v. Canaveral Port Dist.*, 197 Fed. Appx. 839, 842 (11th Cir. 2006).

*Second*, Mr. Owoc waived any argument that VPX's asset sale satisfied the Judgment. When Monster sought a charging order in this proceeding, Mr. Owoc conceded the enforceability of the Judgment even though VPX's asset sale had closed months earlier. Mr. Owoc thus waived any argument that the sale satisfied the Judgment, and the Court may deny the Motion on that basis. *See*

---

[1] VPX (but not Mr. Owoc) declared bankruptcy shortly after the jury's verdict. *See* Declaration of Allison L. Libeu in Support of Plaintiff Monster Energy Company's Opposition to Defendants' Motion to Enforce One Satisfaction Rule ("Libeu Decl.") ¶ 2, Ex. 1 at 1.

[2] Mr. Owoc spends countless pages disparaging Monster and claiming to be the victim of a "legal assault." ECF No. 37 at 14. Monster will not respond separately to each of Mr. Owoc's baseless assertions but notes that Mr. Owoc cites nothing in support of his allegations, all of which have been previously rejected by the California District Court and Bankruptcy Court. *See, e.g.*, Libeu Decl. ¶ 13, Ex. 9 at 2 ("What [the Owocs' motion] offers instead is a revisionist narrative: that the Movants were swept unwillingly into a process they did not create. But Mr. Owoc was not dragged into this bankruptcy; he authorized it. The legal and financial consequences that followed flowed not from persecution, but from decisions made under his leadership—decisions that resulted in multi-hundred-million-dollar judgments for false advertising and trademark infringement.").

*Veolia Water N. Am. Operating Servs., LLC v. City of Atlanta*, 546 F. App'x 820, 824 (11th Cir. 2013).

*Third*, the Judgment was not satisfied by VPX's asset sale. Monster did not credit bid its Judgment but rather **paid $362 million in cash** to acquire VPX's assets. Mr. Owoc cites no legal authority supporting his argument that a judgment is satisfied by a creditor's purchase of a debtor's assets, and there is none. In addition, Mr. Owoc's argument is based on the assertion that Monster acquired VPX's assets at below fair value. Not only is this untrue, but Mr. Owoc's argument is foreclosed by the order approving the sale, in which the Bankruptcy Court explicitly found that the Asset Purchase Agreement between Monster and VPX constituted "the highest or otherwise best offer" for VPX's assets. Libeu Decl. ¶ 3, Ex. 2 at 9.

*Fourth*, the settlement agreement (the "Settlement Agreement") that Monster and VPX entered into in connection with the Asset Purchase Agreement does not compromise Monster's Judgment against Mr. Owoc or VPX. To the contrary, both the Settlement Agreement and the Asset Purchase Agreement preserve the Judgment and provide that it is deemed an allowed claim in VPX's bankruptcy case. *See* ECF No. 37-8 at 12. The Asset Purchase Agreement further permits Monster to litigate the California District Court Action and enforce the resulting Judgment. *See* ECF No. 37-1 at 83 (providing that Monster may "enforce the judgments or other results and determinations of the California District Court Action").

For these reasons and those demonstrated below, Monster respectfully requests that the Court deny Mr. Owoc's Motion.

## II. BACKGROUND

### A. The California District Court Action

After a five-week trial, a jury unanimously found that Mr. Owoc and VPX spent years falsely claiming that their flagship product, the Bang energy drink, contained an ingredient called "Super Creatine" that provided consumers with the physical and mental benefits of creatine. *See* ECF No. 1, Ex. A at 3-4; *Monster Energy Co. v. Vital Pharms., Inc.*, 2025 WL 1111495, at *1 (9th Cir. Apr. 15, 2025).

As the jury found, Mr. Owoc flooded the market with advertisements touting Super Creatine as Bang's distinguishing feature and trumpeting its supposedly beneficial effects on the human body, including building muscle and improving cognition. *See Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 2918724, at *3 (C.D. Cal. Apr. 12, 2023), *aff'd*, 2025 WL 1111495 (9th Cir. Apr. 15, 2025); *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 8168854, at *12 (C.D. Cal. Oct. 6, 2023), *aff'd*, 2025 WL 1111495 (9th Cir. Apr. 15, 2025). Mr. Owoc even claimed that Super Creatine could reverse "mental retardation" and "help" with various forms of dementia, including "Alzheimer's, Parkinson's, and Huntington's diseases." *Monster Energy Co. v. Vital Pharms, Inc.*, 2019 WL 2619666, at *12 (C.D. Cal. May 20, 2019).

Mr. Owoc's false advertising enabled VPX to reach dizzying heights—billions of dollars in retail sales—all while inflicting significant harm on Monster, other competitors, and consumers. *See Monster v. VPX*, 2023 WL 8168854, at *10; *Monster v. VPX*, 2023 WL 2918724, at *3-4. As one might expect, many of these sales represented purchases of Bang by consumers who previously purchased other energy drinks but were allured to change brands by Mr. Owoc's false advertising. *See Monster v. VPX*, 2023 WL 2918724, at *3; *Monster v. VPX*, 2023 WL 8168854, at *10 & n.6. Monster was one such competitor who suffered a precipitous decline in sales. *Monster v. VPX*, 2023

WL 8168854, at *10 & n.5. In the years after Mr. Owoc began falsely advertising Bang, Monster suffered lost sales totaling hundreds of millions of dollars. *See id.*

Monster sued under the Lanham Act to hold Mr. Owoc and VPX accountable for their underhanded sales tactics. *See* ECF No. 1, Ex. A at 2. Following trial, the jury found Mr. Owoc and VPX liable to Monster for false advertising. *See id.* at 3-4. On January 11, 2024, the California District Court entered Judgment, awarding Monster over $300 million and issuing a permanent injunction against Mr. Owoc and VPX enjoining them from continuing to falsely advertise Bang. *See id.* at 9-14.

The United States Court of Appeals for the Ninth Circuit affirmed the Judgment on April 15, 2025. *See Monster v. VPX*, 2025 WL 1111495, at *1.

B.      The Bankruptcy Court Action

Following the jury's verdict in the California District Court Action, VPX and several affiliated companies (collectively, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). *See* ECF No. 37-1 at 15.

On February 24, 2023, the Bankruptcy Court entered an order approving bidding procedures for the sale of substantially all the Debtors' assets under section 363(b) of the Bankruptcy Code. *See* ECF No. 37-8 at 9. With the Bankruptcy Court's oversight, VPX and the other Debtors engaged in a marketing process in furtherance of a sale or financing transaction in an effort to maximize the value of the Debtors' assets. *See id.* The Debtors contacted approximately 150 potential transaction counterparties, over 45 of which executed non-disclosure agreements to obtain diligence information related to the Debtors' assets. *See id.* By the end of the process, the Debtors received only one actionable and qualified bid, which was from Monster. *Id.* at 10.

On June 28, 2023, VPX and the other Debtors entered into an Asset Purchase Agreement pursuant to which they agreed to sell substantially all their assets (the "Purchased Assets") to Blast Asset Acquisition LLC, an acquisition vehicle affiliated with Monster, for $362 million in cash. *See* ECF No. 37-1 at 9, 19. The Bankruptcy Court entered an order approving the sale on July 14, 2023 (the "Sale Order"). Libeu Decl. ¶ 3, Ex. 2. In the Sale Order, the Bankruptcy Court made the following findings:

- "The Debtors conducted a competitive marketing and sale process," which "afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Purchased Assets." *Id.* at 8–9.

- "The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and represents a fair and reasonable offer to purchase the Purchased Assets under the totality of circumstances of these Chapter 11 Cases." *Id.* at 9.

- "The Transaction described in the Asset Purchase Agreement will provide a greater benefit to the Debtors, their estates, and their creditors than any alternative transaction." *Id.*

The Sale Order was not appealed. Libeu Decl. ¶ 4.

Simultaneously and in connection with the Asset Purchase Agreement, VPX and Monster, among others, entered into the Settlement Agreement to address pending litigation between Monster and VPX. Both the Settlement Agreement and the Asset Purchase Agreement preserve the Judgment and expressly provide that it be deemed an allowed claim in VPX's bankruptcy case. ECF No. 37-8 at 12; ECF No. 37-1 at 69. Mr. Owoc is not a party to either agreement. ECF No. 37-7 at 106-07; ECF No. 37-1 at 9.

On July 31, 2023, the sale closed pursuant to the terms of the Asset Purchase Agreement. Libeu Decl. ¶ 5, Ex. 3.

### III.   ARGUMENT

Under Florida law, which governs here, *see* Fed. Civ. Proc. R. 69(a)(1), a judgment may be satisfied "by payment of ***the full amount of such judgment*** or decree, with interest thereon, plus the costs of the issuance, if any, of execution thereon into the registry of the court where rendered." Fla. Stat. Ann. § 55.141 (emphasis added). The problem for Mr. Owoc is that no payment—let alone full payment—has been made here.

In the Motion, Mr. Owoc does not contend that he or VPX have paid any portion of the Judgment. Nor can he because they have not paid a penny. The entire Judgment, plus post-judgment interest, remains outstanding. *See* Libeu Decl. ¶ 7. Nevertheless, Mr. Owoc argues that the Asset Purchase Agreement and Settlement Agreement "resolve[d] Monster's financial interests in connection with its litigation against VPX and Mr. Jack Owoc." *See* ECF No. 37 at 2; *see also id.* at 7 ("Monster's Claims Were Fully Resolved in the Bankruptcy Case"). Mr. Owoc is wrong for the reasons discussed below.

####   A.   <u>The Court Does Not Have Jurisdiction Over Mr. Owoc's Motion</u>

This Court does not have jurisdiction over Mr. Owoc's Motion for two independent reasons.

*First*, this Court lacks jurisdiction to decide whether the Asset Purchase Agreement and Settlement Agreement "resolved" the Judgment. Motions for relief from final judgment must be "addressed to the court which rendered judgment." *De Vos & Co. v. Gabe Corp.*, 1991 WL 161363, at *1 (S.D. Fla Aug. 12, 1991) (quoting *Fuhrman v. Livaditis,* 611 F.2d 203, 204 (7th Cir.1979)); *see also Cascella*, 197 Fed. Appx. at 842 (instructing litigants to file motions for relief in the court where the judgment was entered). A registering court, such as this one, has authority to hear

challenges to a judgment only in limited circumstances not applicable here. *See, e.g.*, *Vizant Techs., LLC v. Whitchurch*, 2016 WL 8856932, at *2–3 (N.D. Ga. May 6, 2016) (recommending that motion for relief from judgment under Rule 60(b) be denied because "it should be decided by the court that rendered the judgment" rather than by registering court). Because the Judgment was entered by the California District Court, any motion seeking to revoke, modify, or otherwise challenge it must be filed in that forum.

*Second*, this Court lacks jurisdiction over Mr. Owoc's challenges to orders of the Bankruptcy Court. In the Motion, Mr. Owoc describes Monster's acquisition of VPX's assets as "one of the most appalling abuses of bankruptcy law in modern history" and accuses everyone involved of "widespread bankruptcy fraud." ECF No. 37 at 9-10. Mr. Owoc's accusations are frivolous.[3] But regardless of merit, Mr. Owoc cannot mount a collateral attack on the Bankruptcy Court's orders in this forum. Any such challenge must be made, if at all, in the Bankruptcy Court. *See Cascella*, 197 F. App'x at 842 ("Because the alleged fraud and bankruptcy fraud took place during bankruptcy proceedings, and [plaintiff's] claim was in effect a challenge to the bankruptcy court's judgment, such a Rule 60(b) motion should have been filed in the bankruptcy court.").

B.   Mr. Owoc Waived Any Argument that VPX's Asset Sale Satisfied the Judgment

Even if this Court had jurisdiction to entertain Mr. Owoc's Motion (which it does not), Mr. Owoc's Motion still fails at the outset because he waived any argument that the sale of VPX's

---

[3] Mr. Owoc has repeatedly raised these tired assertions in the Bankruptcy Court. Time and time again, the Bankruptcy Court has rejected them, finding Mr. Owoc's litigation conduct to be both "frivolous and vexatious." Libeu Decl. ¶ 9, Ex. 5 at 10; *see also id.* ¶ 10, Ex. 6 at 7 (finding "the Owocs' pattern of repetitive, unfounded, and inflammatory filings constitutes a continuing abuse of the judicial process"); *id.* ¶ 8, Ex. 4 at 202 ("Mr. Owoc has appeared at numerous hearings, and has filed numerous motions repeating the same baseless allegations of bias, referring to the participants in this bankruptcy case, including the Court, as a bankruptcy crime syndicate, and yelling 'You will regret this,' when he did not get his way . . . Mr. Owoc's litigation in this case has become vexatious.").

assets satisfied Judgment. A party waives an argument by taking "entirely inconsistent" positions. *Veolia Water N. Am. Operating Servs., LLC v. City of Atlanta*, 546 F. App'x 820, 824 (11th Cir. 2013) (affirming finding that party waived argument by taking inconsistent positions).

Despite the arguments made in his Motion, Mr. Owoc previously conceded the enforceability of Monster's Judgment. After Monster moved for entry of a charging order, *see* ECF No. 10, Mr. Owoc admitted that he "***cannot and does not*** contest the entry of a charging order in this case." ECF No. 19 ¶ 5 (emphasis added). Mr. Owoc further conceded that "Monster may be entitled to the entry of a charging order" and argued only that Monster's lien should be inferior to an IRS tax lien. ECF No. 14 ¶¶ 9–10; *see also id.* ¶ 6 ("While Monster may be entitled to a charging order, Monster's rights pursuant to the charging order are inferior to a tax lien . . . ."). These admissions directly contradict Mr. Owoc's new argument that Monster cannot enforce the Judgment because it was satisfied by VPX's asset sale.

Mr. Owoc's new arguments also contradict his course of conduct throughout this litigation. VPX's asset sale closed almost two years ago. *See* Libeu Decl. ¶ 5, Ex. 3. Monster did not institute this action until eight months later. *See* ECF No. 1. Since then, Monster registered the Judgment (*see id.*), moved for issuance of a writ of execution (ECF No. 6), and moved for proceedings supplementary (ECF No. 8), all with no opposition from Mr. Owoc claiming the Judgment had been satisfied. Mr. Owoc thus waived any argument that the sale of VPX's assets satisfied the Judgment.[4] The Court can deny Mr. Owoc's Motion for this reason alone.

---

[4] In addition, Mr. Owoc's failure to raise the arguments in his Motion earlier in these proceedings—while Monster was taking concrete steps to enforce the Judgment—constitutes forfeiture. *See Acute, Inc. v. ECI Pharms., LLC*, 2025 WL 1731825, at *9 n.4 (S.D. Fla. June 18, 2025) (forfeiture "occurs automatically whenever a party fails to timely assert their rights" (internal quotation marks omitted)).

### C. The Judgment Was Not Satisfied by VPX's Asset Sale

Even if this Court were to reach the merits of Mr. Owoc's Motion (which it should not), Mr. Owoc's Motion is without basis. Mr. Owoc argues that the Judgment has been satisfied by the sale of substantially all of VPX's assets. ECF No. 37 at 10. This argument is nonsensical. Monster **paid $362 million** to acquire VPX's assets. *See* ECF No. 37-1 at 9, 19. Monster did not credit bid its Judgment but conveyed the entire purchase price in cash. *Id.* Mr. Owoc cites no legal support for his argument that an arms-length purchase transaction satisfies an entirely separate Judgment, and there is none.[5]

In addition to being legally deficient, Mr. Owoc's position is factually unsupported. Mr. Owoc bases his argument on the erroneous notion that Monster acquired VPX's assets at a "fraction of their true value." ECF No. 37 at 9. But as the Bankruptcy Court expressly found in approving the sale, "[t]he Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and represents a fair and reasonable offer to purchase the Purchased Assets under the totality of circumstances of these Chapter 11 Cases." Libeu Decl. ¶ 3, Ex. 2 at 9. Mr. Owoc had the opportunity to object to and appeal the Sale Order, but he did neither. *See id.* ¶ 11, Ex. 7 at 13; *id.* ¶ 9, Ex. 5 at 5. The Sale Order is thus final, and Mr. Owoc may not challenge it now. *E.g.*, *In*

---

[5] The cases on which Mr. Owoc relies stand for the unremarkable proposition that payments from one joint tortfeasor reduce the judgment against all joint tortfeasors in the amount received. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008); *Escadote I corp. v. Ocean Three Ltd. P'ship*, 211 So. 3d 1059, 1062 (Fla. Dist. Ct. App. 2016*)*; *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 316 (Fla. 2003). Mr. Owoc also cites a series of cases that do not appear to exist. *See* ECF No. 37 at 3 (citing "*Mickens v. Tenth Judicial Circuit*, 181 So. 3d 1231, 1234 (Fla. 2d DCA 2015)"); *id.* at 8 (citing "*Buci v. Village of Lincolnwood*"); *id.* at 19 (citing "*Buczkowski v. McKay*, 490 So. 2d 1282 (Fla. 1986)"); *id.* (citing "*Cunningham v. Haroona*, 741 So. 2d 603 (Fla. Dist. Ct. App. 1999)"); *id.* (citing "*Boulos v. Morrison*, 880 So. 2d 246 (Fla. Dist. Ct. App. 2004)"). Courts in this district have imposed sanctions for "the submission of a hallucinated, fake case citation." *See, e.g.*, *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, 2025 WL 1440351, at *6 (S.D. Fla. May 20, 2025).

*re Daewoo Motor Co. Ltd., Dealership Litig.*, 2005 WL 8005218, at *7 ("Final sale orders of bankruptcy courts may not be challenged or collaterally attacked outside of a particular method of challenges, objections and appeals.").

This is not the first time that Mr. Owoc has sought to improperly challenge the Sale Order. Mr. Owoc recently raised all the same issues in a multitude of motions before the Bankruptcy Court. The Bankruptcy Court denied Mr. Owoc's motions in their entirety, stating "while [Mr. Owoc] may believe the company was worth billions, the reality is that no one came forward with a qualified bid at that evaluation." Libeu Decl. ¶ 8, Ex. 4 at 207:10–12; *see also id.* ¶ 9, Ex. 5 at 5 ("Assertions by Mr. Owoc that a materially higher bid was 'suppressed' are not supported by any evidence in the record and are contradicted by the extensive sale history and lack of alternative qualifying bids submitted during the process."); *id.* ¶ 12, Ex. 8 at 6 ("There is no evidence that [Keurig Dr Pepper] submitted a qualified bid.").[6] Mr. Owoc's attempt to relitigate these issues in this Court is improper, as his own authority confirms. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("If dissatisfied with the Bankruptcy Court's ultimate decision, [parties] can appeal," but they may not "collaterally attack" the decision in another forum).[7]

---

[6] As he did before the Bankruptcy Court, Mr. Owoc also asserts that VPX's asset sale resulted in a "$45.4 million tax liability assessed by the IRS," implying that "the fair market value was at least $589 million." ECF No. 37 at 17. In support of this argument, Mr. Owoc cites Monster's 10-Q. *Id.* at 16. But Monster's 10-Q says no such thing. The $45.4 million to which Mr. Owoc refers is the "Bang Transaction Gain," which is the "residual of net assets acquired less cash consideration transferred." ECF No. 37-8 at 68. The Bang Transaction Gain was calculated for accounting purposes and has nothing to do with the IRS or any supposed bargain tax. *Id.*

[7] The only other case Mr. Owoc cites for the proposition that this Court may hear challenges to the Bankruptcy Court's orders is inapposite because it involved a direct appeal rather than a collateral attack. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 139 (2009).

### D. The Settlement Agreement Does Not Affect Monster's Judgment

Mr. Owoc is also wrong in suggesting that the Settlement Agreement affected Monster's Judgment. The Settlement Agreement preserves the Judgment and expressly provides that it is deemed an allowed claim in VPX's bankruptcy case. *See* ECF No. 37-8 at 12. Although Mr. Owoc asserts that Monster "relinquished any claim to administrative priority" and "convert[ed]" its Judgment into a "general unsecured claim," ECF No. 37 at 2, there was never any relinquishment or conversion. Monster's Judgment was always unsecured and non-priority. *See* Libeu Decl. ¶ 2, Ex. 1 at 3-4.

Nor did Monster "waive[] any future attempts at collection outside of the bankruptcy process," as Mr. Owoc claims. ECF No. 37 at 2. To the contrary, both the Settlement Agreement and the Asset Purchase Agreement expressly carve the California District Court Action out of the parties' releases.[8] *See* ECF No. 37-8 at 12 ("All pending litigation between Monster and the Debtors shall cease and be settled . . . other than with respect to the California District Court Action . . . ."); ECF No. 37-1 at 82-82 (providing that the releases do not apply to "the California District Court Action" or Monster's claims "against John H. 'Jack' Owoc").

If that were not enough, the Asset Purchase Agreement expressly permits Monster to continue to litigate the California District Court Action and enforce the resulting Judgment: "For the avoidance of doubt, [Monster] may (in its sole discretion) litigate and pursue with the unconditional and irrevocable agreement of the [Debtors] (which is hereby granted) and enforce the judgments or other results and determinations of the California District Court Action." ECF No. 37-1 at 83. The

---

[8] As Mr. Owoc admits, the Asset Purchase Agreement and the Settlement Agreement were "cross-conditioned." ECF No. 37 at 2. They further provide that, to the extent there is a conflict between the Settlement Agreement and the Asset Purchase Agreement, "the terms of the [Asset Purchase Agreement] shall control." ECF No. 37-8 at 28.

Asset Purchase Agreement further provides that it does not "in any way" impair Monster's rights against Mr. Owoc, including with respect to the California District Court Action. ECF No. 37-1 at 84-85. Mr. Owoc's Motion fails to address these dispositive provisions, and his self-serving attempt to write them out of the agreements should be rejected.

## IV. CONCLUSION

Mr. Owoc has repeatedly raised these same frivolous allegations against Monser and about supposed bankruptcy fraud in the California District Court Action and before the Bankruptcy Court. Having failed to gain traction in those cases, Mr. Owoc makes yet another attempt in this forum. This blatant forum shopping is improper and, by itself, grounds to deny Mr. Owoc's Motion. But even if the Court were to reach the merits, it should find Mr. Owoc's assertions to be frivolous and unfounded, as every court before has done. Monster respectfully requests that this Court deny Mr. Owoc's Motion in its entirety.

Dated: July 8, 2025

Respectfully submitted,

**AKERMAN LLP**
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 463-2700 /Fax: (954) 463-2224
Attorneys for Plaintiff/ Judgment Creditor

/s/ Eyal Berger
Eyal Berger, Esquire
Florida Bar No.: 11069
Primary E-mail: eyal.berger@akerman.com
Secondary: eanette.martinezgoldberg@akerman.com

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on July 8, 2024, a true and correct copy of the foregoing has been furnished via the Court's CM/ECF electronic noticing system to Robert F. Reynolds, Esq., rreynolds@robertreynoldspa.com and all other persons entitled to receive electronic notices in this cause.

                                            /s/ Eyal Berger
                                            Eyal Berger, Esq.